**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| IMANI CARROLL, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 2:24-cv-00930 |
| | : | |
| v. | : | |
| | : | |
| FAIRMOUNT BEHAVIORAL | : | **PLAINTIFF DEMANDS** |
| HEALTH SYSTEM; KATHY | : | **A TRIAL BY JURY** |
| KLINGER; and CURTIS | : | |
| BURKHOLDER | : | |
| | : | |
| Defendants. | : | |
| | : | |

Plaintiff, IMANI CARROLL, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants FAIRMOUNT BEHAVIORAL HEALTH SYSTEM, KATHY KLINGER, and CURTIS BURKHOLDER (collectively "Defendants") and avers the following:

**<u>PARTIES</u>**

1. PLAINTIFF IMANI CARROLL (hereinafter also referred to as "PLAINTIFF") is an African American female individual who is a resident of the Commonwealth of Pennsylvania.

2. At all times material, Defendant FAIRMOUNT BEHAVIORAL HEALTH SYSTEM (hereinafter also referred to as "Defendant FAIRMOUNT") is a corporation in the Commonwealth of Pennsylvania.

3. At all times material, Defendant FAIRMOUNT has a principal place of business at 561 Fairthorne Ave., Philadelphia, PA 19128.

4. Defendant KATHY KLINGER (hereinafter also referred to as "Defendant KLINGER") was and is employed by Defendant FAIRMOUNT as a Charge Nurse.

1

5. At all times material, Defendant KLINGER held supervisory authority over PLAINTIFF. Defendant KLINGER is Caucasian.

6. At all times material, Defendant CURTIS BURKHOLDER (hereinafter referred to as "Defendant BURKHOLDER") was and is employed by Defendant FAIRMOUNT as Human Resources Coordinator.

7. At all times material, Defendant BURKHOLDER held supervisory authority over PLAINTIFF. Defendant BURKHOLDER is Caucasian.

## NATURE OF THE CASE

8. This is an action for damages and other relief pursuant to Section 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"); and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being subjected to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

9. Furthermore, this action is to redress the Defendants' unlawful employment practices against PLAINTIFF, including Defendants' unlawful discrimination against PLAINTIFF because of her race and for Defendants' wrongful actions against PLAINTIFF leading up to, and including, her unlawful termination.

10. PLAINTIFF seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest as remedies for Defendants' violations of her rights.

2

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

12. This Court has jurisdiction in that this action involves a Federal Question under Title VII of the Civil Rights Act of 1964.

13. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

14. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

15. Venue is proper in the Eastern District of Pennsylvania based upon Defendants' residency and that a substantial part of the events or omissions giving rise to the claims occurred within Montgomery County in the Commonwealth of Pennsylvania in the Eastern District of Pennsylvania. 28 U.S.C. § 1391(b).

**EXHAUSTION OF REMEDIES**

16. Around September 21, 2023, PLAINTIFF filed a race-based Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

17. PLAINTIFF's Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

18. Around December 6, 2023, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

19. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

20. PLAINTIFF has complied with all administrative prerequisite requirements.

21. PLAINTIFF's PHRA claims are still pending before the PHRC because less than one year has elapsed since PLAINTIFF filed her PHRA claims.

22. PLAINTIFF will seek to amend her complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

## MATERIAL FACTS

23. Around December 13, 2021, PLAINTIFF was hired by Defendant FAIRMOUNT as a Mental Health Technician.

24. Throughout her employment, PLAINTIFF worked in a satisfactory, or above satisfactory, manner.

25. From the onset of PLAINTIFF's employment, Defendant FAIRMOUNT failed to address the pervasive discrimination and harassment towards PLAINTIFF in the workplace due to her race. For example, PLAINTIFF was continually subjected to discriminatory remarks by patients.

26. Specifically, the patients frequently called PLAINTIFF names such as "**monkey**," "**black monkey**," "**black bitch**," "**black cunt**," and "**nigger**."

27. Around April 18, 2023, PLAINTIFF was working with Defendant KLINGER, attempting to complete a new patient admission with an individual who was very agitated.

28. During PLAINTIFF's attempt to admit the new patient, two patients began to through a ball back and forth, interfering with PLAINTIFF's duties.

29. PLAINTIFF politely asked the patients to stop throwing the ball in front of the nurse's station, as it prevented PLAINTIFF from completing her assigned duties.

30. PLAINTIFF provided the patients with an alternative location to throw the ball in the "triangle" located near the back door. The patients then proceeded to the suggested area.

31. A few minutes after this initial interaction, PLAINTIFF was attempting to show the newly admitted patient to their room, when PLAINTIFF was almost hit in the face by the ball.

32. Again, PLAINTIFF asked that the patients stop throwing the ball as it was preventing PLAINTIFF from completing her assigned tasks. However, the patients ignored PLAINTIFF and refused to stop throwing the ball.

33. At this point, PLAINTIFF asked Defendant KLINGER to intervene, as Defendant KLINGER was the Charge Nurse on Duty.

34. Defendant KLINGER refused to intervene and replied to PLAINTIFF that "she was not the nurse."

35. PLAINTIFF explained to Defendant KLINGER that KLINGER was in fact the charge nurse on duty.

36. In an effort to regain order, PLAINTIFF explained to the patients that they were "shutting down the unit" as it was now time to distribute medication and snacks.

37. The patients began to make racially disparaging comments towards PLAINTIFF, such as "**oh here comes the anger black woman**" and "**here comes Ms. Ghetto**."

5

38. At this point PLAINTIFF began to feel unsafe as she was now surrounded by 5 male Caucasian patients, all of whom were using racially charged language.

39. PLAINTIFF repeatedly asked Defendant KLINGER to assist her and help stabilize a potentially dangerous situation.

40. After PLAINTIFF's fourth request, Defendant KLINGER finally intervened and stopped the patients from throwing the ball.

41. As PLAINTIFF attempted to provide snacks to the patients near the pods, several patients began to steal snacks from the cart. PLAINTIFF retrieved the snacks from the patients but was then reprimanded by Defendant KLINGER, who stated "Imani, you can't take their snack from them."

42. Defendant KLINGER attempted to physically restrain PLAINTIFF in an effort to speak with her. PLAINTIFF requested that Defendant KLINGER stop touching her as PLAINTIFF was upset and uncomfortable with the situation at hand.

43. PLAINTIFF decided to take a break outside as this ordeal had upset her greatly.

44. When PLAINTIFF returned Defendant KLINGER had called their supervisor Dmitri and lied that PLAINTIFF had been screaming and that everything that occurred was PLAINTIFF's fault.

45. Due to Defendant KLINGER's failure to assist PLAINTIFF, PLAINTIFF believed that she was not properly supported by Defendant KLINGER due to her race.

46. Around April 21, 2023, PLAINTIFF filed a report detailing the April 18th incident and voiced her concerns about the pervasive race discrimination and harassment she had been subjected while working at Defendant FAIRMOUNT.

47. Specifically, PLAINTIFF reported the discriminatory conduct to Defendant BURKHOLDER via email, which read in relevant part: "**I felt like there was a lot of racial discrimination going on and I felt backed into a corner**."

48. Around April 21, 2023, Defendant BURKHOLDER spoke with PLAINTIFF about the April 18th incident and assured PLAINTIFF that her concerns would be handled.

49. Upon information and belief, Defendant BURKHOLDER did not conduct an investigation into PLAINTIFF'S concerns.

50. Around April 25, 2023, Defendant BURKHOLDER called PLAINTIFF and informed her she was terminated.

51. PLAINTIFF was shocked by her termination.

52. PLAINTIFF was never provided a reason for her termination.

53. As a result of DEFENDANTS' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

54. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

55. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

56. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages as against all the Defendants, jointly and severally.

7

57. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of her race and because she complained of and opposed the unlawful conduct of Defendants related to the above protected classes.

58. The above are just some of the examples of the unlawful discrimination to which the Defendants subjected PLAINTIFF.

59. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

60. PLAINTIFF claims alternative that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

61. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION**
**UNDER 42 U.S.C SECTION 1981**
**(brought by Plaintiff against All Defendants)**

62. Plaintiff, Imani Carroll, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

63. Section 1981 prohibits race discrimination in the making and enforcing of contracts. 42 U.S.C. §1981.

64. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and

8

equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

65. Under Section 1981 both employers and individual employees can be liable for discrimination in employment. See Cardenas v. Massey, 269 F.3d 251, 268 (3d Cir. 2001) ("Although claims against individual supervisors are not permitted under Title VII, this court has found individual liability under § 1981 when [the defendants] intentionally cause an infringement of rights protected by Section 1981, regardless of whether the [employer] may also be held liable.") Al-Khazraji v. Saint Francis College, 784 F.2d 505, 518 (3d Cir. 1986 ("employees of a corporation may become personably liable when they intentionally cause an infringement of rights protected by Section 1981, regardless of whether the corporation may also be held liable.")

66. Defendants violated Section 1981 by intentionally discriminating against the Plaintiff in a serious tangible way with respect to her compensation, terms, conditions, and/or privileges of employment.

67. Plaintiff's protected characteristic (race) was a determinative or motivating factor in Defendants' employment actions.

68. Defendants cannot show any legitimate nondiscriminatory reason for their employment practices and any reasons proffered by the Defendants for their actions against Plaintiffs are pretextual and can readily be disbelieved.

69. Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may have also motivated Defendants' actions against Plaintiff.

70. Defendants acted with the intent to discriminate.

71. Defendants acted upon a continuing course of conduct.

72. Defendant acted with malice or reckless indifference to Plaintiff's federally protected rights and as a result there should be an award of punitive damages against Defendants.

73. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiff against All Defendants)**

74. Plaintiff, Imani Carroll, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

75. The standards for a hostile work environment claim are identical under Title VII and Section 1981.

76. While the standards of liability are identical under Title VII and Section 1981, there is a major difference in the coverage of the two provisions: under Title VII, only employers can be liable for discrimination in employment, but under Section 1981, individuals, including other employees, can be liable for racial discrimination against an employee.

77. Defendants subjected Plaintiff to harassment motivated by Plaintiff's race characteristics.

78. Defendants' conduct was not welcomed by Plaintiff.

79. Defendants' conduct was so severe and/or pervasive that a reasonable person in Plaintiff's positions would find the work environment to be hostile or abusive.

80. Plaintiff believed her work environment was hostile and abusive as a result of Defendants' conduct.

10

81. As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status.

82. Defendants failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, failing to provide a reasonable way for Plaintiff to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

83. Defendants acted upon a continuing course of conduct.

84. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT III**
**RETALIATION**
**UNDER 42 U.S.C. SECTION 1981**
**(brought by Plaintiff against All Defendants)**

85. Plaintiff, Imani Carroll, repeats and realleges each and every allegation made in the above paragraphs of this complaint.

86. The Supreme Court has held that retaliation claims are cognizable under Section 1981 despite the absence of specific statutory language. CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008).

87. The legal standards for a retaliation claim under Section 1981 are generally the same as those applicable to a Title VII retaliation claim.

88. The most common activities protected from retaliation under Section 1981 and Title VII are: (1) opposing unlawful discrimination; (2) making a charge of employment discrimination; (3)

11

testifying, assisting or participating in any manner in an investigation, proceeding or hearing under Section 1981.

89. Here, Defendants retaliated against Plaintiff because of her protected activity under Section 1981.

90. Plaintiff was acting under a reasonable, good faith belief that her, or someone else's, right to be free from discrimination on the basis of race was violated.

91. Plaintiff was subjected to a materially adverse action at the time, or after the protected conduct took place.

92. There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity.

93. Defendants acted upon a continuing course of conduct. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the usually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of her protected activity.

94. As a result of Defendants' violations of Section 1981, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**UNDER TITLE VII**
**(against Corporate Defendants only)**

95. Plaintiff, Imani Carroll, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

96. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

97. Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

98. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions of employment because of Plaintiff's race.  Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

99. Plaintiff's protected characteristics played a determinative factor in Defendants' decisions.

100.    Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

101.     Alternatively, Plaintiff's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

102.     Defendants acted with the intent to discriminate.

103.     Defendants acted upon a continuing course of conduct.

104.     Defendants acted with the intent to discriminate against Plaintiff because of her race.

105.     Defendants wrongfully terminated Plaintiff, in violation of Title VII, solely or in part, because of her race.

106.     Defendants wrongfully terminated Plaintiff, in violation of Title VII solely or in part because Plaintiff is African American.

107.     As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT V**
**HOSTILE WORK ENVIRONMENT**
**UNDER TITLE VII**
**(against Corporate Defendants only)**

108.     Plaintiff, Imani Carroll, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

109.     Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

14

110.     An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

111.     Respondent superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action."  Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

112.     Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

113.     The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

114.     Here, Defendant FAIRMOUNT's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected class (African American) believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

115.     Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority to create a hostile work environment.

116.     Racially-charged language and conduct filled the environment of Plaintiff's work area.

117.     Defendant FAIRMOUNT, and their supervisory employees, knew that the racially-charged language and conduct filled Plaintiff's work environment.

118.     Racially-charged language and conduct occurred on an almost if not daily basis.

119.    Racially-charged language and conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness.

120.    Plaintiff subjectively regarded the racially-charged language and conduct as unwelcome and unwanted and objectively opposed the conduct.

121.    The conduct was both severe and pervasive.

122.    The conduct was emotionally damaging and humiliating.

123.    The conduct unreasonably interfered with Plaintiff's work performance.

124.    The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

125.    Defendant FAIRMOUNT, and its supervisory employees, provided a futile avenue for complaint.

126.    Defendant FAIRMOUNT, and its supervisory employees, acted upon a continuing course of conduct.

127.    As a result of Defendant FAIRMOUNT, and its supervisory employees', violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

16

**COUNT VI**
**RETALIATION**
**UNDER TITLE VII**
**(against Corporate Defendants only)**

128.    Plaintiff, Imani Carroll, repeats and realleges every allegation made in the above paragraphs of this complaint.

129.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of [her] employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

130.    Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

131.    Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

132.    Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting

17

authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

133.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[s]he was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); and Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

134.    An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class."

135.    Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. See Thompson v. North American Stainless, LP, 131 S. Ct. 863, 868 (2011).

136.    Here, Defendant FAIRMOUNT, and its supervisory employees, discriminated against Plaintiff because of her protected activity under Title VII.

137.    Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of race was violated.

138.    Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

18

139.	Defendant FAIRMOUNT, and its supervisory employees, engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

140.	There was a causal connection between the Defendant FAIRMOUNT, and its supervisory employees, materially adverse actions, and Plaintiff's protected activity.

141.	Defendant FAIRMOUNT, and its supervisory employees, actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

142.	Defendant FAIRMOUNT, and its supervisory employees, acted upon a continuing course of conduct.

143.	Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and the Defendant FAIRMOUNT, and its supervisory employees, actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant FAIRMOUNT's supervisory employees' antagonism and change in demeanor toward Plaintiff after Defendant FAIRMOUNT, and its supervisory employees, became aware of Plaintiff's protected activity.

144.	As a result of the Defendant FAIRMOUNT, and its supervisory employees', violations of the Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT VII
## DISCRIMINATION
## UNDER PHRA § 955
### (against all Defendants)

145. Plaintiff, Imani Carroll, hereby repeats and realleges every allegation made in the above paragraphs of this complaint.

146. Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

147. Plaintiff will seek leave to amend this complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## COUNT VIII
## RETALIATION
## UNDER PHRA § 955
### (against all Defendants)

148. Plaintiff, Imani Carroll, hereby repeats and realleges every allegation made in the above paragraphs of this complaint.

149. Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

150. Plaintiff will seek to amend this complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## COUNT IX
## DISCRIMINATION
## UNDER PHRA – AIDING AND ABETTING
### (against Individual Defendants only)

151.    Plaintiff Imani Carroll, repeats and realleges every allegation made in the above paragraphs of this complaint.

152.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

153.    Plaintiff will seek to amend this complaint to assert the newly ripened causes of action under the PHRA against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## JURY DEMAND

PLAINTIFF requests a jury trial on all issues to be tried.

## DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages,

liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

 */s/ Caroline H. Miller*
Caroline H. Miller, Esq.
1628 Pine Street,
Philadelphia, Pennsylvania 19103
Tel: (305) 946-1884
Fax: (305) 503-6741
caroline@dereksmithlaw.com

March 4, 2024

22